IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ANTHONY DELLARCIPRETE,

        Petitioner,

v.                                        Civil Action No. 1:05cv143
                                                     (Judge Keeley)

DOMINIC A. GUTIERREZ,

        Respondent.

## REPORT AND RECOMMENDATION

In this § 2241 habeas corpus action, *pro se* petitioner asserts that the Bureau of Prisons ("BOP") has arbitrarily, capriciously and wrongfully denied his admittance into the Bureau's Residential Drug Abuse Treatment Program ("RDAP") and one-year early release. Upon a preliminary review of the file on January 23, 2006, the undersigned found that summary dismissal was not warranted at that time and the Respondent was directed to file a response to the petition. A response was filed on March 22, 2006. In reply, the Petitioner filed a Motion for Summary Judgment on April 27, 2006, to which the Respondent filed a response on May 8, 2006.

In addition, on May 9, 2006, Petitioner filed Notice of Exhaustion of Administrative Remedies, to which the Respondent filed a reply on May 15, 2006. This matter is before the undersigned for a report and recommendation pursuant to LR PL P § 83.01, et seq.

## I. Factual and Procedural History

According to the petition, Petitioner was convicted of mail fraud, wire fraud and conspiracy to commit same, by the United States District Court for the Northern District of Ohio on April 13, 2004. Petitioner was sentenced to 50 months imprisonment. Petitioner voluntarily surrendered to

the custody of the BOP on May 25, 2004. Petitioner is currently designated to the Federal Correctional Institution in Morgantown, West Virginia ("FCI-Morgantown"), and has a projected release date of April 2, 2008.

On June 2, 2004, psychology staff conducted an intake screening at which time Petitioner reported a history of substance abuse. Specifically, Petitioner asserted that he abused many substances and was interested in drug abuse treatment. Based on this information, the screener recommended that Petitioner participate in a drug abuse treatment program. Pursuant to this recommendation, Petitioner applied for admittance into the BOP's 500 Hour RDAP Program and was provided an RDAP Eligibility Interview on June 29, 2005. During that interview, Petitioner stated that he had used alcohol, marijuana, hallucinogens, cocaine, tranquilizers, and pain pills. Petitioner asserted that his use of these substances caused him several physical and emotional problems. This information was considered by staff and reviewed by Dr. Baker, the program coordinator.

In reviewing Petitioner's eligibility for the program, staff noted that Petitioner's statements at the RDAP Eligibility Interview were inconsistent with what was reported in his presentence investigation report ("PSI"). In his PSI, Petitioner stated that he only drank occasionally, that he had smoked marijuana a few times a couple of years ago, and that he had never taken any illicit drugs. After determining that Petitioner's offense would not preclude him from eligibility for early release, Dr. Baker issued a Residential Drug Abuse Program Notice to Petitioner. In the notice, Dr. Baker informed Petitioner that he did not qualify for the RDAP because there was no verification in Petitioner's PSI of drug or alcohol abuse within one-year of Petitioner's arrest or indictment. However, Dr. Baker informed Petitioner that if he could provide documentation from a health care

2

provider of drug or alcohol abuse within one-year of his arrest, then Petitioner could be reconsidered for the RDAP. In addition, Dr. Baker informed Petitioner that if he felt the need for drug treatment, he was eligible to participate in the Non-Residential Drug Program, a program that is not as intensive as the RDAP and which does not have a one-year sentence reduction upon completion.

On August 5, 2005, Petitioner filed a request to staff seeking to personally discuss his RDAP eligibility with Dr. Baker. Dr. Baker told Petitioner that if he had new information regarding his eligibility, he should submit the information, otherwise, they could discuss any other questions at mainline.[1]

Sometime thereafter, Petitioner or a family member, contacted his family physician at the Suburban South Family Physicians Offices. Petitioners' family doctor, Dr. Lonsdorf, wrote a letter to staff at FCI-Morgantown stating that Petitioner's alcohol misuse was a contributing factor to his gastroesphageal reflux disease. In addition, Dr. Lonsdorf provided some of Petitioner's pre-incarceration medical records to FCI-Morgantown staff. However, those records only made one mention of any substance abuse and that was at a physical on January 23, 2004. At that examination, Petitioner told Dr. Lonsford that he was a weekend drinker.

On September 15, 2005, Petitioner filed an administrative remedy at the institutional level, appealing Dr. Baker's finding that he was ineligible for the RDAP. Petitioners' administrative remedy was granted in part and denied in part by Warden Dominic Gutierrez. To the extent that Petitioner requested participation in the RDAP, his appeal was denied because he lacked the appropriate documentation of substance abuse. However, Warden Gutierrez found that to the extent that Petitioner sought other means of substance abuse treatment, his request was granted and

---

[1] Mainline is a period at mealtime in which staff are available to answer inmate concerns.

Petitioner would be placed in the next available Non-Residential Drug Treatment Program. Petitioner has never entered the Non-Residential program or sought any other additional treatment for his alleged substance abuse. Petitioner appealed the Warden's decision on October 12, 2005.

In the meantime, on November 7, 2005, Dr. Baker sent Petitioner a Notice to Inmate, DAP Eligibility Review. In that notice, Dr. Baker stated that he had reviewed the letter and medical records sent by Dr. Lonsdorf on Petitioner's behalf. Dr. Baker also explained that he consulted with FCI Morgantown's clinical director and the Mid-Atlantic Regional DAP Coordinator and that they concluded that Petitioner was still not eligible for the RDAP. Petitioner's contradictory statements in his PSI and Dr. Lonsdorf's failure to actually verify a substance abuse problem were cited as reasons for again denying Petitioner's admittance into the RDAP.

On November 14, 2005, Petitioner's administrative appeal to the Mid-Atlantic Regional Office was denied. Petitioner appealed that decision on December 15, 2005 to the BOP's Central Office. However, Petitioner's appeal was rejected because Petitioner failed to sign the administrative remedy and failed to provide a copy of the institutional remedy. Petitioner was informed that he had 15 days to resubmit his appeal in proper form. Petitioner resubmitted his appeal on January 24, 2006. However, Petitioner's resubmitted appeal was also rejected. This time Petitioner's appeal was rejected because Petitioner failed to sign the remedy form and also failed to provide a complete set of appeal forms. Petitioner was again provided 15 days to resubmit his appeal in proper form. The respondent asserts that Petitioner failed to file any further administrative remedies. Nonetheless, on May 9, 2006, Petitioner filed a Notice of Exhaustion of Administrative Remedies which contains a copy of an administrative remedy response issued by the BOP's Central Office in which Petitioner's appeal is denied. Thus, it appears that during the course of these

4

proceedings, Petitioner has completed the exhaustion of his administrative remedies with regard to the claim raised in the petition.

## II. Contentions of the Parties

### A. The Petitioner

In the petition, Petitioner asserts that Dr. Baker's assessment of his RDAP eligibility is incorrect, that he is statutorily eligible for the RDAP, and that his denied entry into the program violates his due process and equal protection rights. In support of his claims, Petitioner asserts that his PSI states that he smoked marijuana a few times several years ago, that he drinks alcohol occasionally, and that he was arrested for driving under the influence several years ago. Moreover, Petitioner asserts that his central file contains a psychology services intake screening form which recommends that Petitioner be placed in a drug abuse program. Petitioner also attaches several exhibits to his petition which purportedly show a history of alcohol abuse. Those exhibits include affidavits from Petitioner's wife and mother attesting to his alcohol abuse and a letter from his family physician stating that alcohol misuse was a contributing factor to some of Petitioner's medical problems. Petitioners' exhibits also contain information about certain medications that he is currently taking.

### B. The Respondent

In the response, the Respondent first asserts generally, that BOP staff has appropriately used its discretionary authority to determine that Petitioner is not eligible for the RDAP and subsequent early release. Second, the Respondent asserts that under the Prison Litigation Reform Act ("PLRA"), Petitioner failed to exhaust his administrative remedies prior to filing suit. Third, the Respondent asserts that even had Petitioner properly exhausted his administrative remedies prior to

filing suit, 18 U.S.C. § 3625 precludes this Court's jurisdiction to review the BOP's substantive determination about Petitioner's early release. Fourth, the Respondent asserts that the BOP did not violate Petitioner's due process rights because there is no protected liberty interest in discretionary early release. Fifth, the Respondent asserts that Petitioner's equal protection argument is without merit because Petitioner cannot show that similarly situated prisoners are treated differently or that any alleged discrimination is purposeful or intentional. Accordingly, the Respondent contends that the petition should be denied and dismissed with prejudice.

### III. Overview of the RDAP

The Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA) amended 18 U.S.C. § 3621 to require the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). To carry out this requirement, the BOP must provide residential substance abuse treatment for all eligible prisoners, subject to the availability of appropriations. 18 U.S.C. § 3621(e)(1). An "eligible prisoner" is one who is "determined by the Bureau of Prisons to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B)(i) and (ii). As an incentive for the successful completion of the residential treatment program, the BOP may, in its discretion, reduce an inmate's sentence by up to one year. 18 U.S. C. § 3621(e)(2); see also Lopez v. Davis, 531 U.S. 230 (2001).

The BOP has promulgated regulations at 28 C.F.R. § 550.56 to implement the statutory requirement. According to the regulations, in order to be considered eligible for the residential drug abuse program, the inmate must have a verifiable documented drug abuse problem, must have no serious mental impairment which would substantially interfere with or preclude full participation

in the program, must sign an agreement acknowledging his program responsibility, must ordinarily be within thirty-six months of release and the security level of the residential program institution must be appropriate for the inmate. 28 C.F.R. § 550.56(a). Participation in the program is voluntary and decisions on placement are made by the drug abuse treatment coordinator. 28 C.F.R. § 550.56(b).

The application of § 550.56 is set forth in Program Statement ("PS") 5330.10, which states in relevant part:

> **Eligibility. An inmate must meet all the following criteria to be eligible for the residential drug abuse treatment program.**
>
> **(1) The inmate must have a verifiable documented drug abuse problem.** Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the Residential Drug Abuse Program Eligibility Interview followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information. The information must meet the diagnostic criteria for substance abuse or dependence indicated in the Diagnostic and Statistical Manual of the Mental Disorders, Fourth Edition, (DSM-IV). This diagnostic impression must be reviewed and signed by a drug abuse treatment program coordinator.
>
> Additionally, there must be verification in the Presentence Investigation (PSI) report or other similar documents in the central file which supports the diagnosis. Any written documentation in the inmate's central file which indicates that the inmate used the same substance, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem.

PS 53310, Ch. 5, § 5.4.1, page 3-4 (emphasis in original).

The DSM-IV, a manual published by the American Psychiatric Association, "defines 'substance dependence' and 'substance abuse' as 'a maladaptive pattern of substance abuse, leading to clinically significant impairment or distress . . . in [a] twelve month period. The DSM-IV also lists several symptoms relevant to diagnosing each of these conditions." See Goren v. Apker, 2006

7

WL 1062904 (S.D.N.Y. April 20, 2006) (citations omitted). The BOP requires that at least one of three symptoms listed in the criteria for substance abuse or dependence occur in the same twelve-month period. Thus, the BOP has instituted a practice of examining the prisoner's central file to determine if documentation exists to support a claim of substance abuse or dependence during the twelve-month period immediately preceding the prisoner's incarceration. See Respondent's Response to Show Cause Order (dckt. 11) at Ex. 1, Declaration of Edward Baker, Ph.D. at ¶ 13.

## IV. Analysis

### A. Exhaustion

In the response to the petition, the Respondent argues that under the PLRA, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). The Respondent then cites several cases in which the Supreme Court and the Fourth Circuit Court of Appeals have held that under the PLRA, Congress has mandated the proper completion of any prison administrative remedy process capable of addressing an inmate's complaint and providing some form of relief prior to filing suit in federal court. See Porter v. Nussle, 534 U.S. 516 (2002); Booth v. Churner, 531 U.S. 956 (2001); Anderson v. XYZ Prison Health Services, Inc., 407 F.3d 674 (4th Cir. 2005). In addition, the Respondent notes that the Fourth Circuit has applied these same principles to petitions for writ of habeas corpus. See Asare v. U.S. Parole Comm., 2 F.3d 540, 544 (4th Cir. 1993); Miller v. Clark, 958 F.2d 368, 1992 WL 48031 (4th Cir., March 16, 1992).

While the undersigned does not dispute that the PLRA mandates the exhaustion of administrative remedies, or that similar principles have been applied in habeas corpus actions, the

8

Respondent's argument misses the mark. The requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. § 2241. See LaRue v. Adams, 2006 WL 1674487 *5 - *7 (S.D.W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) cert. denied, 521 U.S. 1131 (1997)).[2]

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See Larue, 2006 WL 1674487 at *8 (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

Here, it is not disputed that Petitioner failed to exhaust his administrative remedies prior to filing suit in this Court. However, this case has been served, a response has been filed and the

---

[2] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue 2006 Wl 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneous with the PLRA and that under the AEDPA Congress established separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas actions were not typical civil actions because they involve someone's liberty, rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.

9

matter is ripe for review. Moreover, during the course of these proceedings, it appears as if Petitioner has completed the administrative remedy process. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation would be a waste of judicial time and resources. Accordingly, the undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits.

**B. 18 U.S.C. § 3625**

Sections 3621(b) and (e) clearly state that determining which prisoners are eligible for substance abuse treatment is within the sole discretion of the BOP, as is the decision to reduce a prisoner's sentence by up to one-year upon the successful completion of such programs. Moreover, pursuant to 18 U.S.C. § 3625, Congress has specifically excluded these subsections from judicial review under the Administrative Procedures Act ("APA"). See Davis v. Beeler, 966 F.Supp. 483, 489 (E.D.Ky. 1997). Section 3625 states: "[t]he provisions of section 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."[3]

Accordingly, any substantive decision by the BOP to grant or deny Petitioner's admittance into the RDAP, or regarding his eligibility to receive a one-year sentence reduction, is not reviewable by this Court. However, where judicial review under the APA is specifically excluded by statute, the United States Supreme Court has found that two questions are still appropriate for the Court's review. Davis v. Beeler, 966 F. Supp. at 489. The first question is whether any cognizable constitutional claim has been presented. See Webster v. Doe, 486 U.S. 592 (1988)). The second

---

[3] Pursuant to 5 U.S.C. § § 701 and 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute is entitled to judicial review thereof," except to the extent that a statute precludes judicial review.

question is whether an agency's interpretation of a statute is contrary to well-settled law. See Neal v. United States, 516 U.S. 284 (1996)).

**C. Petitioner's Constitutional Claims**

    1. Due Process

In the petition, Petitioner asserts that the BOP's decision that he was not eligible for the RDAP and subsequent one-year sentence reduction is a violation of his right to due process. This claim is without merit.

It is well established that in order to demonstrate a due process violation, a petitioner must show that he was deprived of a liberty or property interest protected under the Fifth Amendment. Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979). However, the Supreme Court has made it quite clear that a prisoner has no constitutional or inherent right in being released before the completion of a valid sentence. Id.; see also Sandin v. Conner, 515 U.S. 472, 484 (1995). In fact, directly on point with this case, several courts, including this one, have found that there is no protected liberty interest in discretionary early release under 18 U.S.C. § 3621(e) for completion of the RDAP. See Cook v. Wiley, 208 F.3d 1314, 1322-23 (11th Cir. 2000); Venegas v. Henman, 126 F.3d 760, 765 (5th Cir. 1997); Jacks v. Crabtree, 114 F.3d 983, 986 n. 4 (9th Cir. 1997); Fonner v. Thompson, 955 F.Supp. 638, 642 (N.D.W.Va. 1997).

    2. Equal Protection

In the petition, Petitioner asserts that the BOP's decision that he was not eligible for the RDAP and subsequent one-year sentence reduction is a violation of his equal protection rights. This claim is also without merit.

The equal protection clause provides that no person shall be denied equal protection under

the laws. Therefore, to be successful on an equal protection claim, the petitioner must demonstrate that he has been treated differently from others who are similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Here, Petitioner fails to assert that any similarly situated persons were treated differently than him, or that the alleged unequal treatment was the result of intentional or purposeful discrimination. In fact, the Declaration of Dr. Baker confirms that per policy, any prisoner who wishes to participate in the RDAP must show verification of substance abuse within one year prior to his arrest or indictment. See Declaration of Edward Baker, PhD., at ¶ 13.[4] Because Petitioner has failed to show that any other inmate lacking adequate documentation of substance abuse has been admitted to the program and granted a one-year sentence reduction, Petitioner has failed to show that his rights under the equal protection clause have been violated.

## D. **Agency's Interpretation of the Statute**

The standards set forth in Chevron U.S.A. Inc., v. Natural Resources Defense Council, Inc., 674 U.S. 837 (1984), govern a Court's review of an agency's construction of a statute. Specifically,

> [w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. In the intent of Congress is clear, that is the end of the matter; for the courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

---

[4] See also Laws v. Barron, 348 F. Supp. 2d 795, 806 (E.D.Ky. 2004) (the BOP has consistently imposed these same requirements on all inmates throughout the BOP prison system).

Id. at 842-43 (footnotes omitted).

In this case, the question is how the phrase "substance abuse problem" is defined. However, Congress has not spoken to this precise question. Instead, Congress has left it to the discretion of the BOP to determine which prisoners have a substance abuse problem and are therefore eligible for the RDAP. In defining what constitutes a substance abuse problem, the BOP has reasonably turned to a diagnostic manual published by mental health professionals who deal with this issue on a regular basis. The DSM-IV diagnoses a substance abuse problem based upon the existence of certain symptoms during a twelve-month period. Declaration of Edward Baker, PhD., at ¶ 13. Because of the high demand for the RDAP program, and the potential for abuse due to the one-year sentence reduction, the BOP has found that a prisoner's substance abuse must be verified. See Laws v. Barron, 348 F. Supp. 2d at 800 ( "Droves of inmates who were convicted of non violent . . . offenses have applied to be accepted into qualifying programs such as the RDAP so as to be eligible for early release.") Therefore, it is reasonable for the BOP to review a prisoner's central file, including his PSI and other official court documents, for verification of self-reported substance abuse problems.

Further, the BOP has reasonably determined that the documented substance abuse problem must occur within the twelve months preceding arrest or incarceration because those individuals are most in need of the program and will receive the maximum benefit. See Declaration of Edward Baker, PhD., at ¶ 13 (inmates who do not have a verified substance abuse problem within one-year or arrest or incarceration are considered to be in remission making RDAP unnecessary). Thus, the undersigned finds that the BOP's interpretation of "substance abuse problem," and its related

criteria, is a reasonable interpretation of the 18 U.S.C. § 3621,[5] and the decision of Dr. Baker finding Petitioner ineligible for the RDAP and subsequent one-year sentence reduction does not violate the terms of the statute authorizing the RDAP.[6]

## V. Recommendation

Based on the foregoing, the undersigned recommends that the petitioner's § 2241 petition be DENIED and DISMISSED WITH PREJUDICE. In light of this finding, the undersigned also recommends that the Petitioner's Motion for Summary Judgment (dckt. 12) be DENIED.

---

[5] Other Courts have made similar findings. See Shew v. FCI Beckley, 2006 WL 3456691 * 4 (S.D. W. Va. Sept. 19, 2006) (finding that the BOP's interpretation of § 3621(e) "neither violates any statutory or constitutional provision, nor is in conflict with any rule, regulation or program statement"); Montilla v. Nash, 2006 WL 1806414 (D.N.J. June 28, 2006) (the challenged policy and practice of the BOP is a reasonable interpretation of the § 3621(e)); Quintana v. Bauknecht, 2006 WL 1174353 (N.D.Fla. May 2, 2006) (finding that the BOP's practice of requiring written document of a verifiable drug abuse problem is not an impermissible or unreasonable interpretation of § 3621(e)); Goren v. Apker, supra (finding that the BOP's interpretation of § 3621(e) is a permissible exercise of the broad discretion Congress granted to the BOP to administer the RDAP); Laws v. Barron, supra (the BOP's interpretation of § 3621(e) does not contravene well-settled caselaw), *but compare*, Kuna v. Daniels, 234 F.Supp.2d 1168 (D.Or. 2002) (finding that PS 5330.10 does not require verification in an inmate's central file of abuse or dependence, only the mere use of drugs or alcohol, therefore, the BOP acted arbitrarily in imposing requirements beyond those in its program statement); Mitchell v. Andrews, 235 F.Supp.2d 1085 (E.D.Cal. 2001) (finding that it is an unreasonable exercise of the BOP's discretion under the statute to require verification of a substance abuse problem in the twelve months preceding arrest or incarceration).

[6] Petitioner's PSI states only the occasional use of alcohol and marijuana several years ago. Although Petitioner argues that his PSI is inaccurate because the PSI Officer did not write down everything Petitioner told him, or because Petitioner did not hear or understand all of the questions asked of him due to hearing loss in one ear, there is no indication in the record before this Court that Petitioner ever objected to the facts as stated in the PSI or with the findings of the PSI Officer. In addition, his medical records prior to incarceration reveal only that he was a "weekend drinker" and that his alcohol consumption could have contributed to his gastroesphageal reflux. The affidavits from Petitioner's mother and wife are compelling, but clearly carry the same problems of reliability as Petitioner's self-reported allegations. In addition, the undersigned finds it suspect that although Petitioner and his family have stated such an urgent need for substance abuse treatment, Petitioner has not taken advantage of the BOP's Non-Residential Drug Treatment Program for which he has been found eligible. If Petitioner's intention was truly to receive help for a legitimate substance abuse problem, and not just to receive the benefit of the one-year sentence reduction, it seems that Petitioner would have taken advantage of any opportunity to receive help. It is this particular kind of misuse that the BOP is attempting to prevent by requiring verification of substance abuse.

Within ten (10) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner and any counsel of record.

DATED: December 29, 2006.

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE